SCOTT W. HANSEN (admitted pro hac vice)
LAURA A. BRENNER (admitted pro hac vice)
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097
E-mail: shansen@reinhartlaw.com
lbrenner@reinhartlaw.com

WILLIAM R. WARNE (Bar No. 141280)
MEGHAN M. BAKER (Bar No. 243765)
Downey Brand
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
Telephone: 916-520-5510
Facsimile: 916-520-5910
E-mail: wwarne@downeybrand.com
mbaker@downeybrand.com

ATTORNEYS FOR DEFENDANT
VISION SERVICE PLAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASPEX EYEWEAR, INC.<br><br>Plaintiff,<br><br>v.<br><br>VISION SERVICE PLAN; MARCHON EYEWEAR, INC.; ALTAIR EYEWEAR, INC.<br><br>Defendants. | CASE NO. 2:10 CV 00632 _JAM-GGH<br><br>**DECLARATION OF THOMAS A. FESSLER IN SUPPORT OF VISION SERVICE PLAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: May 19, 2010<br>Time: 9:30 a.m.<br>Courtroom: Courtroom No. 6<br>Judge: Hon. John A. Mendez |

**DECLARATION OF THOMAS A. FESSLER**

1. My name is Thomas A. Fessler and I have personal knowledge of the facts stated in this declaration.

---

DECLARATION OF THOMAS A. FESSLER

2. I am the Chief Legal Officer and General Counsel of Vision Service Plan ("VSP") and have overall responsibility for litigation involving VSP and its affiliate companies. Two of those affiliates are Marchon Eyewear, Inc. and Altair Eyewear, Inc.

3. Aspex Eyewear, Inc. has commenced litigation against Altair in New York and Marchon in Miami. The declarations of Brian Bodine and Joe Paek describe those two cases and why we believe they have no merit.

4. Aspex has informed this Court that VSP threatened to end its business relationship with Aspex unless Aspex dismissed its claims against Marchon and Altair without any relief. To the contrary, I met with Jose Pena, Aspex's General Counsel, and Thiery Ifergan, the son of Aspex's owner, in Miami on February 10 and 11, 2010 and offered to continue business as usual if Aspex would do two things. First, agree to arbitrate the Miami case in two phases. The first phase would determine whether Aspex's claims are barred by the settlement and dismissal with prejudice of the prior action before the United States District Court for the Central District of California. If Aspex prevailed in phase one, the second phase would establish a royalty rate that Marchon would pay Aspex through the time necessary for Marchon to liquidate its inventory of accused products, and Marchon would pay Axpex's arbitration attorney fees and costs. The second thing we asked of Aspex was to dismiss the New York case and treat the reexamination then pending before the United States Patent and Trademark Office as a final, binding decision; if the PTO upheld the final surviving Aspex patent claim at issue in the New York case, VSP would discontinue the accused products and liquidate its remaining inventory. On March 20, 2010, I met with Thierry, Jose and Thierry's father, Nanu Ifergan, in New York and made the same proposal. I repeated

2
DECLARATION OF THOMAS A. FESSLER

my proposal a third time in a letter to Mr. Pena earlier this month. A copy of that letter is attached as Exhibit A. Normally, I would not disclose settlement conversations with an adversary, but Mr. Pena's suggestion that VSP demanded that Aspex dismiss the New York and Miami cases without any relief simply is not true.

5. I declare under penalty of perjury that this information is true and correct.

Dated this __29__ day of April 2010.

_____
Thomas A. Fessler

REINHART\3494448

3
DECLARATION OF THOMAS A. FESSLER

# EXHIBIT A



Thomas A. Fessler
Chief Legal Officer
General Counsel

April 5, 2010

José Peña, General Counsel
Aspex Eyewear Group
2755 S.W. 32nd Avenue
Pembroke, FL 33023

OFF THE RECORD – FOR SETTLEMENT PURPOSES ONLY PURSUANT TO FRE 408

Dear José:

I thought it might help to lay out the basic ideas we have been discussing for a global settlement and for restoring a healthy business relationship between our companies. If they are acceptable to Nonu, Thierry and you, I will direct our attorney to prepare the appropriate agreements.

But first I want to thank Thierry again for reaching out to me in New York. The personal relationship we began to build offers real hope for the future.

I will discuss the Miami, Sacramento and New York cases separately, but they are all interrelated and probably should be addressed together as part of a global solution.

## MIAMI CASE

I am willing to simplify this dispute into two sets of questions and decide them through a bifurcated arbitration in New York City after dismissing the Miami litigation. The first phase will decide whether Aspex's claims should be dismissed because of the earlier litigation, settlement and dismissal with prejudice. If the arbitrator decides that the earlier proceeding precludes the current one or that the

Jose
April 5, 2010
Page 2

current claims should have been made part of the earlier proceeding, Marchon will prevail and all claims against it, its affiliates and licensees will be deemed to be concluded and released. If Aspex prevails in phase one, the parties would negotiate a mutually acceptable reasonable royalty for past infringement and for a temporary license long enough to permit the sell-through of all remaining infringing inventory. Of course, Marchon would immediately cease making or purchasing the infringing product.

If the parties do not agree on the royalty rate applicable to past sales and sales under the temporary license, or how long the temporary license needs to last, the arbitrator will conduct the second phase of the arbitration. Aspex and Marchon will instruct the arbitrator to determine a reasonable time period for the temporary license that fairly lets us deplete all of the inventory, and to determine a reasonable royalty rate between 1% and 6% of net sales price we realized (or will realize) on past and future sales.

The arbitration would occur in New York City, using a single, mutually agreed arbitrator who would operate under an arbitration agreement that we create together. The prevailing party would be entitled to recover it's share of the arbitrator's fee together with its own reasonable attorney fees and costs for the arbitration. If the parties can't agree on the arbitrator or the arbitration agreement, we would ask JAMS to select the arbitrator and to supply the rules for the arbitration.

### SACRAMENTO CASE

All claims in the Sacramento litigation would be dismissed with prejudice. VSP and Aspex simultaneously would issue a joint press release along the lines described in my recent letter to you notifying the marketplace of our settlement and that no change will occur in VSP's coverage of Aspex's lenses. VSP also would agree not to single out Aspex for unfavorable coverage due to the presently pending litigations. This assurance would apply to all VSP plans in the United States, Canada and the United Kingdom through November 1, 2015, but it would not apply to any other act or omission that could subject another frame provider to adverse action by VSP.

José, I was so impressed with our meetings in New York a couple of weeks ago that I would add an additional proposal. I think we should agree that Nonu, Thierry and you meet with me (or whoever holds my office at the time) and the president of

Jose
April 5, 2010
Page 3

the affected business unit and make a good faith effort over the course of at least 30 days to resolve any future dispute that might cause any of our companies to make a claim against one another. Had we begun that process years ago, I'm convinced we would not be where we are today.

## NEW YORK CASE

This case has lasted too long and has cost both of us too much. The PTO is reexamining the patent and could do one of three things: revoke it entirely, uphold it entirely or modify it. It is my understanding that as of March 29, 2010 the PTO has issued an Office Action in the reexam of the '054 patent in which they accepted all of our grounds for rejection and reexam of this patent. I should also note that, if the PTO modifies it, any damages would not begin to accrue until the PTO's decision; there would be no claim for past damages.

I propose that the New York litigation be dismissed with prejudice, including any claims of inequitable conduct asserted by Altair, and that we have 9 months to sell off any remaining inventory.

José, I sincerely hope that you, Thierry and Nonu look favorably upon these ideas. Additional details are in the term sheet I e-mailed on March 29. We need to act quickly because it is in each of our interests to do so. But if you think this proposal needs to be adjusted in any respect, please feel free to call me personally at your earliest convenience.

With best regards,

Thomas A. Fessler

REINHART\3409737