KATHLEEN E. FINNERTY - (SBN 157638) (Counsel for Service)
NANCY J. DOIG - (SBN 226593)
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
finnertyk@gtlaw.com, doign@gtlaw.com

Attorneys for Plaintiff
ASPEX EYEWEAR, INC.

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASPEX EYEWEAR, INC. | CASE NO. 2:10-CV-00632-JAM-GGH |
| Plaintiff, | **SUPPLEMENTAL DECLARATION OF JOSÉ PEÑA, ESQ.** |
| v. | |
| VISION SERVICE PLAN; MARCHON EYEWEAR, INC.; ALTAIR EYEWEAR, INC. | **DATE:** May 19, 2010<br>**TIME:** 9:30 a.m.<br>**CTRM:** 6 |
| Defendants. | **JUDGE:** Hon. John A. Mendez |

I, JOSÉ PEÑA, ESQ., declare as follows:

1.     I am General Counsel for plaintiff Aspex Eyewear, Inc. ("Aspex"). I make this supplemental declaration in support of Aspex's application for a preliminary injunction. Specifically, I make this declaration to respond to various inaccuracies and misleading statements in the Bodine, Baker, and Fessler Declarations. I have personal knowledge of the facts stated in this declaration, and if called on as a witness, I could competently testify to them.

**The Bodine Declaration**

2.     Mr. Bodine's declaration fails to point out that the sole basis for Altair's contention of non-infringement respecting the '054 Patent at issue in the New York Altair Action, and the sole basis for the Altair District Court's grant of summary judgment of non-

1    infringement to Altair, was that under the prior District Court's construction of the term

2    "frame" used in the '054 Patent claims, Altair's accused products did not infringe the '054

3    Patent because its auxiliary spectacle frames did not have lens rims.  Altair's position and the

4    District Court's claim construction were rejected by the Federal Circuit in an August 1, 2008

5    decision, and the District Court's order granting summary judgment of non-infringement to

6    Altair was reversed.  (*See* Ex. G to Bodine Decl.)  As a result of the Federal Circuit's August 1,

7    2008 decision, all of Altair's accused eyewear literally infringe the '054 Patent.

8          3.      Mr. Bodine's Declaration also fails to point out that in the same August 1, 2008

9    decision, the Federal Circuit affirmed the District Court's denial of Altair's motion for

10   summary judgment dismissing Aspex as a party plaintiff for lack of standing.  (*Id.*)

11         4.      Mr. Bodine attaches as Exhibit H to his Declaration the PTO's recent grant of

12   Altair's request to reexamine the '054 Patent.  Mr. Bodine's apparent intent in attaching this

13   document is to infer that the '054 Patent is invalid.  What Mr. Bodine fails to tell the Court,

14   however, is that these requests for reexamination are almost invariably granted by the PTO, and

15   the grant of a reexamination request is the first step of a long process that statistically will take

16   years to complete.  Any attempt by Altair to predict the result of the reexamination process

17   would be little more than rank speculation.  Mr. Bodine also fails to tell the Court that Altair

18   first filed for reexamination in 2009, seven years after the litigation began.  Significantly, Altair

19   never moved the New York District Court to stay the litigation in deference to the

20   reexamination proceeding, which indicates to me that even Altair recognizes that the District

21   Court would simply view a motion to stay as a tactical maneuver designed to delay the trial.

22   Thus, the New York case will be proceeding through the remainder of discovery and to trial.

23         5.      Mr. Bodine attaches as Exhibits A and E to his Declaration July 12 and October

24   7, 2005 settlement proposals sent to Aspex.  I presume that Mr. Bodine's intent here is to show

25   that VSP has been threatening to de-list Aspex if it continued to pursue the New York Altair

26   Action since 2005.  All the settlement proposals show, however, is that VSP has no trouble

27   using its size and might to threaten, intimidate, and extort its adversaries.  In any event, what

28   Mr. Bodine fails to point out is that it was not until the last week of December 2009, almost 5

1  years later, that VSP took the extraordinary step of actually contacting Aspex's customers and

2  telling them that Aspex was going to be de-listed because Aspex was suing VSP subsidiaries

3  Altair and Marchon for patent infringement.  It is these actions by VSP, taken in the last week

4  of December 2009 and forward, that have caused irreparable injury to Aspex, and form the

5  basis of this lawsuit against VSP -- not VSP's empty threats to de-list Aspex in 2005.

6  **The Baker Declaration**

7      6.    Exhibit A to the Baker Declaration is purported to be a listing of cases in which

8  Aspex is a named plaintiff or defendant.  Presumably, Ms. Baker's intent in attaching this case

9  listing is to convey the impression that Aspex is litigious.  All this case listing shows, however,

10  is that there are many competitors in the marketplace who have copied the eyewear designs to

11  which Aspex holds patent rights; demonstrating both the validity and commercial success of

12  the inventions.  In addition, Ms. Baker's Declaration fails to explain that Aspex: (1) has had

13  tremendous success enforcing its patent rights in both the District Courts and the Federal

14  Circuit; and (2) has earned many millions of dollars in judgments, settlements, and injunctions

15  against those who have infringed upon its patent right.  As an example, I direct the Court's

16  attention to the Federal Circuit's recent decision in *Revolution Eyewear, Inc. v. Aspex Eyewear,*

17  *et al.*, 563 F.3d 1358 (Fed. Cir. 2009) (a copy of which is attached as Exhibit A to this

18  Supplemental Declaration).  In that case, the Federal Circuit upheld the Central District of

19  California's grant of summary judgment of infringement and a multi-million dollar damages

20  verdict in connection with U.S. Patent No. RE37,545, a seminal magnetic eyewear patent that

21  Aspex has co-owned with Contour Optik, Inc. since 2002.  Notably, the infringer in that case,

22  Revolution Eyewear, Inc., licensed its infringing eyewear to VSP subsidiary Marchon.

23  Marchon's commercial endeavors under the Revolution license have resulted in two patent

24  infringement cases brought by Aspex and Contour against Marchon: one in the Central District

25  of California which was settled; and the other being the Florida Marchon Action which resulted

26  in VSP's calls to Aspex's customers announcing that Aspex was going to be de-listed.

27

28

SUPPLEMENTAL DECLARATION OF JOSÉ PEÑA, ESQ.

7.      The lifeblood of Aspex is its intellectual property rights.  Although Aspex is a small family-owned business, it has always defended its patent rights vigorously, and to the degree necessary to both survive and thrive -- even against bullies such as VSP.  As such, Aspex has resisted all requests to license its technology whether those requests were expressed as a good faith attempt to license our technology or VSP's attempt to *force* Aspex to surrender its patent rights.  I explained this to VSP in an email to its General Counsel, dated February 9, 2010 (a copy of which is attached as Exhibit B to this Supplemental Declaration).

**The Fessler Declaration**

8.      Mr. Fessler's view of the settlement discussions between Aspex and VSP on February 10-11 and March 3, 2010 is highly misleading.  As I mentioned in my initial declaration, VSP's initial offer sought to bar all litigation between Aspex, VSP, Altair, and Marchon without any consideration being paid to Aspex.  In Mr. Fessler's view, keeping Aspex listed as an approved vendor was consideration enough.  Aspex rejected this notion, and I informed him as such by telling him that none of the frame vendors listed in VSP's "Provider Preference Manual" had to pay a price, let alone the high price of abandoning our cases against Marchon and Altair.

9.      Furthermore, Mr. Fessler's description of the purported offer detailed in paragraph 4 of his declaration is incomplete.  First, this was the last of a series of unacceptable demands by VSP and, as I understand it, was provided in this form *after* this litigation was filed.  The last offer sought to cap Marchon's potential damages at a royalty rate of between 1 and 6%.  Second, this offer again fails to account for Altair's willful disregard and infringement of Aspex's intellectual property for over 10 years.  While Altair has profited to the tune of millions using Aspex's technology, VSP now wished to avoid suffering the same fate of the infringers before them and wielded its power over the ECPs to force Aspex to submit.

10.     Lastly, during our discussions, on at least two occasions VSP began to call accounts despite Mr. Fessler's assurances to the contrary.  (*See* Ex. B.)  Aspex continued to receive inquiries and complaints regarding the "VSP situation" and continued losing sales as a

1 result.   Sometime during late February and early March we informed VSP that in order to

2 continue "good faith" negotiations, VSP needed to communicate a retraction to the customers.

3 I understood and felt that VSP's actions and continued calls were motivated in bad faith in

4 order to pressure and apply undue duress to Aspex during this time period and force Aspex to

5 accept an otherwise unacceptable resolution.

6      I declare under penalty of perjury that the foregoing is true and correct.

7 Executed this _11_^th day of May, 2010.

8

9                                   JOSÉ PEÑA, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL DECLARATION OF JOSÉ PEÑA, ESQ.

**EXHIBIT A**

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

**H**

United States Court of Appeals,
Federal Circuit.
REVOLUTION EYEWEAR, INC., Plain-
tiff/Counterclaim Defendant-Appellant,
v.
ASPEX EYEWEAR, INC. and Thiery Ifergan, De-
fendants/Counterclaimants-Appellees,
and
Manhattan Design Studio, Inc., Contour Optik, Inc.,
and Asahi Optical Co. Ltd., Counterclaimants-Cross
Appellants.
Nos. 2008-1267, 2008-1376.

April 29, 2009.

**Background:** Assignee of reissue patent disclosing an
eyeglass device comprising a primary frame and an
auxiliary frame sued competitor for infringement. The
United States District Court for the Central District of
California, Virginia Anne Phillips, J., granted as-
signee's motion for summary infringement, and denied
competitor's motions for summary judgment, and for
judgment as a matter of law (JMOL), for a new trial, or
for remittitur. Competitor appealed.

**Holdings:** The Court of Appeals, Michel, Chief Judge,
held that:
(1) claim directed to the primary frame satisfied patent
law's written description requirement;
(2) "recapture rule" did not apply to claim directed to
the primary frame;
(3) inventor did not disclaim subject matter of claim
directed to the primary frame;
(4) competitor was not entitled to JMOL;
(5) district court did not abuse its discretion in denying
competitor's motion for a new trial;
(6) competitor was not entitled to remittitur; and
(7) district court did not clearly err by failing to find
case "exceptional," so as to be eligible for and war-
ranting an award of attorney fees.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ☜776**

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)1 In General
        170Bk776 k. Trial De Novo. Most Cited
Cases

**Federal Courts 170B ☜813**

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)4 Discretion of Lower Court
        170Bk813 k. Allowance of Remedy and
Matters of Procedure in General. Most Cited Cases
An appellate court reviews a district court's grant of
summary judgment de novo; by contrast, an appellate
court gives considerable deference to the trial court,
and will not disturb a trial court's denial of summary
judgment unless it finds that the court has indeed
abused its discretion.

**[2] Patents 291 ☜99**

291 Patents
  291IV Applications and Proceedings Thereon
    291k99 k. Description of Invention in Speci-
fication. Most Cited Cases
Claim of reissue patent disclosing an eyeglass device
comprising a primary frame and an auxiliary frame,
that was directed solely to a primary frame, and ad-
dressed the prior art issue of "decreased strength,"
satisfied patent law's written description requirement.
35 U.S.C.A. § 112.

**[3] Federal Courts 170B ☜595**

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(C) Decisions Reviewable
      170BVIII(C)2 Finality of Determination
        170Bk585 Particular Judgments, De-
crees or Orders, Finality
          170Bk595 k. Summary Judgment;
Judgment on Pleadings. Most Cited Cases
In general, an order denying a motion for summary

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

judgment is non-final and non-appealable; however, a denial of a motion for summary judgment may be appealed, even after a final judgment at trial, if the motion involved a purely legal question and the factual disputes resolved at trial do not affect the resolution of that legal question.

**[4] Patents 291 ☞141(5)**

291 Patents
    291VII Reissues
        291k141 Identity of Invention
            291k141(3) Enlargement of Claims
                291k141(5) k. Claiming Matter Suggested But Not Claimed in Original Application. Most Cited Cases
When a patentee seeks reissuance of his patent, he cannot introduce any new matter into the reissue application; therefore, the new claims or other added material must find support in the original specification. 35 U.S.C.A. § 251.

**[5] Patents 291 ☞99**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of Invention in Specification. Most Cited Cases
When a patentee seeks reissuance of his patent, the original specification must satisfy the written description requirement. 35 U.S.C.A. § 251.

**[6] Patents 291 ☞99**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of Invention in Specification. Most Cited Cases
Purpose of patent law's written description requirement is to prevent an applicant from later asserting that he invented that which he did not. 35 U.S.C.A. § 112.

**[7] Patents 291 ☞99**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of Invention in Specification. Most Cited Cases
To satisfy patent law's written description requirement,

the disclosure of a specification must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, the inventor was in possession of the invention.

**[8] Patents 291 ☞100**

291 Patents
    291IV Applications and Proceedings Thereon
        291k100 k. Drawings, Specimens, Models, or Photographs. Most Cited Cases
Under proper circumstances, drawings alone may provide a "written description" of an invention as required by patent law. 35 U.S.C.A. § 112.

**[9] Patents 291 ☞99**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of Invention in Specification. Most Cited Cases
The principle articulated in *Honeywell Inc. v. Victor Co. of Japan, Ltd.* and *Resonate Inc. v. Alteon Websystems, Inc.*, that when a patent specification sets out two different problems in the prior art, it is unnecessary for each and every claim in the patent to address both problems, applies not only in claim construction, but also in written description analysis.

**[10] Patents 291 ☞99**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of Invention in Specification. Most Cited Cases
Inventors can frame their patent claims to address one problem or several, and patent law's written description requirement will be satisfied as to each claim as long as the description conveys that the inventor was in possession of the invention recited in that claim. 35 U.S.C.A. § 112.

**[11] Patents 291 ☞99**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of Invention in Specification. Most Cited Cases
The essential inquiry for patent law's requirement that a reissue patent be reissued for the invention disclosed

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

in the original patent is whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees; this inquiry is analogous to patent law's written description requirement. 35 U.S.C.A. §§ 251, 112.

**[12] Patents 291 ☞141(6)**

291 Patents
    291VII Reissues
        291k141 Identity of Invention
            291k141(3) Enlargement of Claims
                291k141(6) k. Claiming Matter Abandoned, Disclaimed, or Rejected on Original Application. Most Cited Cases
"Recapture rule," prohibiting reissue patent claims broader than original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution, did not apply to claim of reissue patent disclosing an eyeglass device comprising a primary frame and an auxiliary frame, where no amendments or arguments were made during prosecution of the original patent.

**[13] Patents 291 ☞141(6)**

291 Patents
    291VII Reissues
        291k141 Identity of Invention
            291k141(3) Enlargement of Claims
                291k141(6) k. Claiming Matter Abandoned, Disclaimed, or Rejected on Original Application. Most Cited Cases
The "recapture rule" is a restriction on the ability of patentees to broaden the scope of their claims through reissue patents; under this rule, claims that are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution are impermissible.

**[14] Patents 291 ☞141(6)**

291 Patents
    291VII Reissues
        291k141 Identity of Invention
            291k141(3) Enlargement of Claims
                291k141(6) k. Claiming Matter Abandoned, Disclaimed, or Rejected on Original Application. Most Cited Cases

To determine whether a patent applicant surrendered particular subject matter under the recapture rule, prohibiting reissue patent claims broader than original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution, a court looks to the prosecution history for arguments and changes to the claims made in an effort to overcome a prior art rejection.

**[15] Patents 291 ☞167(1.1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(B) Limitation of Claims
            291k167 Specifications, Drawings, and Models
                291k167(1.1) k. Specification as Limiting or Enlarging Claims. Most Cited Cases
A patent specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor; in that instance the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive.

**[16] Patents 291 ☞167(1.1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(B) Limitation of Claims
            291k167 Specifications, Drawings, and Models
                291k167(1.1) k. Specification as Limiting or Enlarging Claims. Most Cited Cases
Any limitation in a patent specification based on an intentional disclaimer must be shown with reasonable clarity and deliberateness.

**[17] Patents 291 ☞101(4)**

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(4) k. Specifications and Drawings, Construction With. Most Cited Cases
Inventor of reissue patent disclosing an eyeglass device comprising a primary frame and an auxiliary frame did not, through statements made in the specification, disclaim the subject matter of claim directed

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

to the primary frame by disclaiming an auxiliary frame not stably supported in top-mounting configuration and a primary frame having embedded magnet members, as inventor's invention was not directed to either disclaimer, but was instead directed to a primary frame with magnetic members supported by projections attached to rear/sides of the frame to solve "decreased strength" problem addressed in the prior art.

**[18] Patents 291 ☞226.6**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
            291k226.5 Substantial Identity of Subject Matter
            291k226.6 k. Comparison with Claims of Patent. Most Cited Cases
"Literal infringement" of a patent claim requires that the accused device literally embodies every limitation of the claim.

**[19] Courts 106 ☞96(7)**

106 Courts
    106II Establishment, Organization, and Procedure
        106II(G) Rules of Decision
            106k88 Previous Decisions as Controlling or as Precedents
            106k96 Decisions of United States Courts as Authority in Other United States Courts
            106k96(7) k. Particular Questions or Subject Matter. Most Cited Cases
Court of Appeals reviews the denial of post-trial motions for judgment as a matter of law (JMOL), a new trial, and remittitur by applying the law of the regional circuit.

**[20] Federal Courts 170B ☞776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
        170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most Cited Cases
In the Ninth Circuit, the court of appeals reviews a district court's denial of a motion for judgment as a matter of law (JMOL) de novo.

**[21] Patents 291 ☞312(5)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k312 Evidence
            291k312(3) Weight and Sufficiency
            291k312(5) k. Particular Patents.
Most Cited Cases
Under Ninth Circuit law, substantial evidence supported jury's verdict of $4.3 million to assignee of patent disclosing an eyeglass device comprising a primary frame and an auxiliary frame in infringement action, in light of testimony of infringer's chief executive officer (CEO) about the prices for the infringing products.

**[22] Patents 291 ☞323.3**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k323 Final Judgment or Decree
            291k323.3 k. Relief from Judgment or Decree. Most Cited Cases
Under Ninth Circuit law, district court did not abuse its discretion in denying alleged patent infringer's motion for a new trial after jury awarded $4.3 million to assignee of patent disclosing an eyeglass device comprising a primary frame and an auxiliary frame, as the $4.3 million damages award was within reason.

**[23] Federal Courts 170B ☞825.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)4 Discretion of Lower Court
            170Bk825 New Trial or Rehearing
            170Bk825.1 k. In General. Most Cited Cases
In the Ninth Circuit, the denial of a motion for a new trial is reviewed for an abuse of discretion.

**[24] Federal Civil Procedure 170A ☞2373**

170A Federal Civil Procedure
    170AXVI New Trial
        170AXVI(C) Proceedings
            170Ak2372 Hearing and Determination

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

170Ak2373 k. Presumptions; Construction of Evidence. Most Cited Cases
Under Ninth Circuit law, in deciding a motion for a new trial, the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party.

**[25] Federal Civil Procedure 170A ☜2339**

170A Federal Civil Procedure
 170AXVI New Trial
  170AXVI(B) Grounds
   170Ak2338 Verdict or Findings Contrary to Law or Evidence
    170Ak2339 k. Weight of Evidence.
Most Cited Cases
Under Ninth Circuit law, the existence of substantial evidence does not prevent a court from granting a motion for a new trial if the verdict is against the clear weight of the evidence; however, a district court may not grant or deny a new trial merely because it would have arrived at a different verdict.

**[26] Patents 291 ☜323.3**

291 Patents
 291XII Infringement
  291XII(C) Suits in Equity
   291k323 Final Judgment or Decree
    291k323.3 k. Relief from Judgment or Decree. Most Cited Cases
Under Ninth Circuit law, jury verdict of $4.3 million to assignee of patent disclosing an eyeglass device comprising a primary frame and an auxiliary frame in infringement action was not grossly excessive, so as to entitle alleged infringer to remittitur; verdict was supported by substantial evidence, and the district court found the jury verdict well within the range of damages advocated by the parties at trial.

**[27] Federal Civil Procedure 170A ☜2345.1**

170A Federal Civil Procedure
 170AXVI New Trial
  170AXVI(B) Grounds
   170Ak2345 Excessive Damages
    170Ak2345.1 k. In General. Most Cited Cases
Under Ninth Circuit law, a jury's supportable finding

of the amount of damages must be upheld unless the amount is grossly excessive or monstrous.

**[28] Federal Courts 170B ☜827**

170B Federal Courts
 170BVIII Courts of Appeals
  170BVIII(K) Scope, Standards, and Extent
   170BVIII(K)4 Discretion of Lower Court
    170Bk825 New Trial or Rehearing
     170Bk827 k. Inadequate or Excessive Damages. Most Cited Cases
 (Formerly 170Bk813)
Under Ninth Circuit law, a trial court's decision against remittitur is reversed only on a showing of clear abuse of discretion.

**[29] Patents 291 ☜325.11(3)**

291 Patents
 291XII Infringement
  291XII(C) Suits in Equity
   291k325 Costs
    291k325.11 Disbursements in General
     291k325.11(2) Attorney Fees
      291k325.11(3) k. Award to Plaintiff. Most Cited Cases
District court did not clearly err by failing to find infringement action involving a patent disclosing an eyeglass device comprising a primary frame and an auxiliary frame an "exceptional case," eligible for and warranting an award of attorney fees under patent law, even though the district court rightfully concluded that alleged infringer's conduct amounted to "unclean hands;" such a limited finding of willfulness on an equitable issue was not a sufficient clear and convincing finding of willfulness to support finding the case exceptional.

**[30] Patents 291 ☜325.11(2.1)**

291 Patents
 291XII Infringement
  291XII(C) Suits in Equity
   291k325 Costs
    291k325.11 Disbursements in General
     291k325.11(2) Attorney Fees
      291k325.11(2.1) k. In General.
Most Cited Cases
"Exceptional cases," allowing the award of reasonable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

attorney fees to the prevailing party under patent law, usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement. 35 U.S.C.A. § 285.

**|31| Patents 291 ☜324.54**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k324 Appeal
                291k324.54 k. Presumptions and Discretion of Lower Court. Most Cited Cases

**Patents 291 ☜324.55(2)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k324 Appeal
                291k324.55 Questions of Fact, Verdicts, and Findings
                    291k324.55(2) k. Clearly Erroneous Findings. Most Cited Cases
The determination of whether a case is "exceptional" and, thus, eligible for and warranting an award of attorney fees under patent law is a two-step process: (1) the district court must determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, the district court must then determine in its discretion whether an award of attorney fees is justified, a determination that the court of appeals reviews for an abuse of discretion. 35 U.S.C.A. § 285.

**|32| Patents 291 ☜314(5)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k314 Hearing
                291k314(5) k. Questions of Law or Fact. Most Cited Cases
Issues of fact underlying equitable intervening rights in the reissuance of a patent are matters for court, not jury disposition. 35 U.S.C.A. § 252.

**|33| Patents 291 ☜227**

291 Patents

291XII Infringement
    291XII(A) What Constitutes Infringement
        291k227 k. Intent or Purpose, and Knowledge. Most Cited Cases

**Patents 291 ☜314(5)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k314 Hearing
                291k314(5) k. Questions of Law or Fact.
Most Cited Cases
Liability for willfulness of patent infringement turns on considerations of intent, state of mind, and culpability, and although fairness as between patentee and infringer is a consideration in the determination of whether illegal behavior warrants an enhanced penalty, the question does not thereby become "equitable;" the issue of willful infringement, therefore, remains with the trier of fact.

**Patents 291 ☜328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases
5,568,207, 6,343,858. Cited.

**Patents 291 ☜328(4)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(4) k. Reissue. Most Cited Cases
37,545. Infringed.
**\*1362** R. Joseph Trojan, Trojan Law Offices, of Beverly Hills, CA, argued for plaintiff/counterclaim defendant-appellant. Of counsel was Dylan C. Dang.

Michael A. Nicodema, Greenberg Traurig, LLP, of Florham Park, NJ, argued for defendants/counterclaimants-appellees, and counterclaimants-cross appellants.

Before MICHEL, Chief Judge, BRYSON, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
(Cite as: 563 F.3d 1358)

POSNER,[FN*] Circuit Judges.

> FN* The Honorable Richard A. Posner, Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

MICHEL, Chief Judge.

In 2002, Revolution Eyewear, Inc. ("Revolution") initiated a patent infringement action against Aspex Eyewear, Inc. ("Aspex") and Thierry Ifergan in the United States District Court for the Central District of California. Aspex, together with Contour Optik, Inc., Manhattan Design Studio, Inc., and Asahi Optical Co. Ltd. (collectively, "Contour"), counterclaimed that Revolution infringed claims 6, 22, and 34 of U.S. Patent No. RE37,545 ("'545 patent"). This appeal only relates to the counterclaim. Revolution appeals the district court's orders (1) denying Revolution's motion for summary judgment of invalidity of claim 22 of the '545 patent, (2) granting Contour's motion for summary judgment of infringement of claim 22 of the '545 patent, and (3) denying Revolution's motions for judgment as a matter of law ("JMOL"), for a new trial, or for remittitur. Contour cross-appeals the district court's order denying Contour's motion for attorney fees based on Revolution's alleged willful infringement of the '545 patent. For the reasons set forth below, we affirm.

## I. BACKGROUND

The technology in this case involves a spectacle frame that supports an auxiliary frame, enabling the user to securely fasten a second set of lenses (e.g., sunglass lenses) onto the primary frame (often holding prescription lenses). Contour is the assignee of the '545 patent, the reissue patent of U.S. Patent No. 5,568,207 ("'207 patent"). The sole inventor for both patents is Richard Chao.

According to the '545 patent, at the time of the invention, at least two deficiencies existed in conventional spectacle frames: the "stable support" issue and the "decreased strength" problem. The former refers to the fact that because the auxiliary lenses were simply attached to the frames by magnetic materials, the auxiliary lenses might easily move downward relative to the frames and might be easily disengaged from the frames when the *1363 users conducted jogging or

jumping exercises. '545 patent col.1 ll.26-32. Chao's invention addresses this issue through an auxiliary frame that may be stably supported on the primary frame, i.e., the "top-mounted" design. Id. col.2 ll.49-56. The "decreased strength" problem originated from the design of the prior art frames, in which the magnetic materials were embedded in the frames, thus requiring the excavation of four or more cavities in a frame. Id. col.1 ll.33-37. In Chao's invention, the magnetic members are supported by projections located at the rear/side portions of both the primary frame and the auxiliary frame. Id. col.2 ll.36-38, ll.43-44. Because the magnetic members are not embedded in the frames, the strength of the frames is not decreased. Id. col.3 ll.24-26.

The original '207 patent discloses an eyeglass device comprising a primary frame and an auxiliary frame. The only two claims of the '207 patent are both directed to the primary frame and auxiliary frame combination. The '545 patent has thirty-four claims. The only claim at issue, claim 22, recites:

> 22. An eyeglass device comprising:
>
> a primary spectacle frame for supporting primary lenses therein and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections, said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses.

'545 patent col.6 ll.46-59.

The alleged infringer, Revolution, makes and sells IMF and IMF/T magnetic clip-on eyewear. These products include a primary frame and an auxiliary frame, with the auxiliary frame magnetically mounted at the bottom of the primary frame. Both the primary frame and the auxiliary frame include a pair of projections secured to the rear/sides of the frame. Each projection supports a magnetic member. None of the magnetic members is embedded in the frames.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

## II. PROCEDURAL HISTORY

In 1999, Aspex sued Revolution for infringement of the '207 patent. *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.,* No. 99-CV-1623, 2001 WL 34852697, at *1, 2001 U.S. Dist. LEXIS 25831, at *1-2 (C.D. Cal. June 4, 2001). The district court found that claim 1 of the '207 patent was directed to the "top-mounted" primary and auxiliary frame combination and that Revolution's products were in a "bottom-mounted" configuration. *Id.* 2001 WL 34852697, at *2-3, 2001 U.S. Dist. LEXIS 25831, at *5, 10. Thus, the court granted Revolution's motion for summary judgment of non-infringement. *Id.* 2001 WL 34852697, at *9, 2001 U.S. Dist. LEXIS 25831, at *27. This court summarily affirmed. *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.,* 42 Fed.Appx. 436 (Fed.Cir.2002).

In 2002, Revolution sued Aspex for infringement of U.S. Patent No. 6,343,858 ("'858 patent"). Contour counterclaimed that Revolution infringed claims 6, 22, and 34 of the '545 patent. Later, the district court dismissed Revolution's '858 patent **\*1364** infringement action for lack of standing. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087 (C.D.Cal. Apr. 13, 2005). Thus, the only matter left in this lawsuit is Contour's '545 patent infringement action.

### A. *Summary judgment of infringement of claim 22*

Because Contour offered no opposition, the district court granted Revolution's motion for summary judgment of non-infringement as to claims 6 and 34. [FN1] *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087, slip op. at 6 (C.D.Cal. Aug. 7, 2003) ("*SJ Order of Non-infringement of Claims 6 and 34* "). The court, however, denied the motion for summary judgment of non-infringement of claim 22. *Id.* at 11-19.

> FN1. Both claims 6 and 34 are directed to the primary and auxiliary frame combinations.

Later, Contour filed a motion for summary judgment of infringement of claim 22. Revolution conceded in its initial brief that its primary frames included all of the elements of claim 22 except that a top-mounted auxiliary frame would not be "stably supported."

However, in its supplemental brief, Revolution abandoned the argument that claim 22 included a "stable support" limitation. Therefore, the court found that Revolution's primary frames literally infringed claim 22 and granted Contour's motion. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087 (C.D.Cal. Apr. 30, 2007) ("*SJ Order of Infringement of Claim 22* ").

### B. *Summary judgment of validity of claim 22*

In a separate order issued on the same day, the court denied Revolution's motion for summary judgment of invalidity of claim 22. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087 (C.D.Cal. Apr. 30, 2007) ("*SJ Order of Validity* "). It concluded that even though the specification of the '545 patent addressed two deficiencies in the prior art, claim 22 need not include a "stable support" limitation because the claim was directed solely to the "decreased strength" problem. *Id.* at 22-23. The court observed that the drawings of the '545 patent "appear[ed] to convey to a person of ordinary skill in the art the fact that the substance of claim 22 was in the possession of the inventor at the time he applied for the patent." *Id.* at 17. Similarly, it found that "a person skilled in the art would have identified the subject matter of claim 22 as having been disclosed in the ' 207 patent." *Id.* at 25-26.

The district court further entertained Revolution's argument under the recapture rule even though no claim amendments or arguments were made during the prosecution of the '207 patent. *Id.* at 29. The court held that Revolution failed to establish that Contour surrendered claims without a "stable support" limitation because such a limitation was directed to the auxiliary frame while claim 22 was directed to the primary frame only. *Id.* at 35-37.

### C. *Damages and post-trial proceedings*

As Revolution's infringement liability was established by the summary judgment rulings, the case proceeded to trial on the damages issue only. After a four-day trial, the jury returned a verdict, finding a royalty rate of 5% and awarding damages of $4,319,530 to Contour. **\*1365** *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087, 2007 WL 5478798, slip op. at 2 (C.D.Cal. Sept. 21, 2007) (" *Special Verdict* "). Afterwards, the district court concluded that Revolution was entitled to absolute intervening rights and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

reduced the damages award by $125,964. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-1087, slip op. at 28 (C.D.Cal. Jan. 3, 2008) ("*Order on Intervening Rights* "). However, the court rejected Revolution's equitable intervening rights defense. *Id.* at 32. Specifically, the court found that "Revolution acted with 'unclean hands' after it learned of the Court's April 30, 2007, Order Granting Summary Judgment in favor of Contour and finding that Revolution's products infringed Claim 22 of the '545 patent." *Id.* at 29.

On February 25, 2008, the district court issued an order granting in part Contour's motion for attorney fees. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087, slip op. at 13 (C.D.Cal. Feb. 25, 2008) ("*Fees Order* "). It awarded fees based on Revolution's litigation misconduct, *id.* at 6-13, but denied fees based on Revolution's alleged willful infringement of the '545 patent, *id.* at 3-6. On the same day, the court entered a final judgment, awarding Contour $4,193,567 in damages plus various interests and fees. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087, slip op. at 6 (C.D.Cal. Feb. 25, 2008). The district court later denied Revolution's motion for JMOL, for a new trial, or for remittitur. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* No. 02-CV-01087 (C.D.Cal. Apr. 24, 2008).

Revolution appeals the issues of validity, infringement, and the denial of its post-trial motions. Contour cross-appeals the denial of attorney fees based on its argument of willful infringement. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### III. DISCUSSION

A. *Standard of review*

[1] We review a district court's grant of summary judgment de novo. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998). By contrast, we give considerable deference to the trial court, and "will not disturb a trial court's denial of summary judgment unless we find that the court has indeed abused its discretion." *Little Six, Inc. v. United States,* 280 F.3d 1371, 1373 (Fed.Cir.2002). Summary judgment is appropriate when no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Thus, summary judgment may be granted when no

"reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

B. *Analysis*

As an initial matter, we observe that the preamble of claim 22 recites "an eyeglass device" and the '545 patent describes an eyeglass device to "include[ ] a primary and an auxiliary spectacle frames for supporting lenses." '545 patent, Abstract (emphasis added). At the same time, the district court repeatedly stated that claim 22 was directed only to the primary frame, not the primary/auxiliary frame combination. *See, e.g., SJ Order of Non-infringement of Claims 6 and 34,* slip op. at 14; *SJ Order of Infringement of Claim 22,* slip op. at 5; *SJ Order of Validity,* slip op. at 25. On appeal, Revolution does not challenge this statement. In fact, Revolution concedes in its brief that "new claim 22[is] directed to a primary frame alone instead of the combination." Therefore, we decide **\*1366** the case on the premise that claim 22 is directed only to the primary frame.

1. *Validity of claim 22* [FN2]

> FN2. At the court's invitation, the parties presented their positions during oral argument regarding whether Revolution properly preserved the issue of validity for appeal. The district court merely denied Revolution's motion for summary judgment of invalidity of claim 22. In general, an order denying a motion for summary judgment is non-final and non-appealable. *Glaros v. H.H. Robertson Co.,* 797 F.2d 1564, 1573 (Fed.Cir.1986). Of course, there is the exception that "[a] denial of a motion for summary judgment may be appealed, even after a final judgment at trial, if the motion involved a purely legal question and the factual disputes resolved at trial do not affect the resolution of that legal question." *United Techs. Corp. v. Chromalloy Gas Turbine Corp.,* 189 F.3d 1338, 1344 (Fed.Cir.1999). The parties disagree on whether there is any factual issue to be tried regarding the validity of claim 22. We do not need to resolve this dispute as Contour does not raise this issue in its brief and therefore has waived this argument.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

[2][3] Revolution argues that claim 22 is invalid for violating: (1) the written description requirement under 35 U.S.C. § 112, ¶ 1; (2) 35 U.S.C. § 251 because it does not claim the same invention as was disclosed in the original '207 patent; and (3) the recapture rule. Under 35 U.S.C. § 282, an issued patent is presumed valid. Thus, Revolution bears the burden to prove invalidity by clear and convincing evidence. *See, e.g., Univ. of Rochester v. G.D. Searle & Co., 358 F.3d 916, 920 (Fed.Cir.2004).*

a. *Written description requirement*

Revolution argues that the specification of the '545 patent teaches a top-mounted combination eyewear while claim 22 broadly claims "the universe of magnetic primary frames." As such, Revolution asserts that claim 22 violates the written description requirement under § 112, ¶ 1.

[4][5][6][7][8] When a patentee seeks reissuance of his patent, he cannot introduce any new matter into the reissue application. 35 U.S.C. § 251. Therefore, the new claims or other added material must find support in the original specification. In other words, the original specification must satisfy the written description requirement. "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not...." *Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed.Cir.2003).* To satisfy the written description requirement, the disclosure of the specification must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession *of the invention.*" *Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed.Cir.1991).* "[U]nder proper circumstances, drawings alone may provide a 'written description' of an invention as required by § 112." *Id.* at 1565; *see also Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc., 291 F.3d 1317, 1322 (Fed.Cir.2002)* ("Drawings constitute an adequate description if they describe what is claimed and convey to those of skill in the art that the patentee actually invented what is claimed.").

As explained earlier, claim 22 is directed solely to a primary frame. The district court found that figure 3 of the '545 patent, the same as figure 3 of the original '207 patent, depicted each element claimed in claim 22. Revolution does not dispute this finding. However, it argues that claim 22 does not satisfy the written description requirement because the claim *1367 does not address both of the two prior art deficiencies identified in the '207 patent. This argument is without merit.

[9] First, we have held that when the specification sets out two different problems present in the prior art, it is unnecessary for each and every claim in the patent to address both problems. *See Resonate Inc. v. Alteon Websystems, Inc., 338 F.3d 1360, 1367 (Fed.Cir.2003); Honeywell Inc. v. Victor Co. of Japan, Ltd., 298 F.3d 1317, 1326 (Fed.Cir.2002).* Revolution insists that *Honeywell* and *Resonate* are distinguishable because they are "claim construction cases" while the present case is a "written description case." We discern no meaningful distinction. Certainly, a claim construction and a written description analysis are two separate processes. However, they serve related functions in determining whether a claim is commensurate with the scope of the specification-a court looks to the specification for guidance to ascertain the scope of the claim in claim construction; it also looks to the specification to decide whether the disclosure provides adequate support for the claims in written description analysis. Therefore, contrary to Revolution's contention, the principle articulated in *Honeywell* and *Resonate* applies not only in claim construction, but also in written description analysis. In fact, as noted by the district court, we have previously applied *Honeywell* and *Resonate* in the written description context. *See Cordis Corp. v. Boston Scientific Corp., 188 Fed.Appx. 984, 990 (Fed.Cir.2006)* ("[W]hen a patent includes two inventive components, particular claims may be directed to one of those inventive components and not to the other.").

[10] Revolution next argues that *Cordis* is factually distinguishable in that the benefits of the two inventive components in the *Cordis* patent are not tied to each other, while the solutions to the "stable support" and "decreased strength" problems in the present case are directly related. This alleged distinction is based on the false premise that if the problems addressed by the invention are related, then a claim addressing only one of the problems is invalid for lack of sufficient written description. Inventors can frame their claims to address one problem or several, and the written description requirement will be satisfied as to each claim as long as the description conveys that the inventor was in possession of the invention recited in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

that claim.

In sum, as claim 22 is directed solely to a primary frame and it addresses the prior art "decreased strength" issue, we conclude that the written description requirement is satisfied.

b. *Claiming the same invention*

[11] Revolution also argues that claim 22 is invalid for violating 35 U.S.C. § 251 because it does not claim the same invention as disclosed in the original '207 patent. According to § 251, a reissue patent shall be reissued "for the invention disclosed in the original patent." The essential inquiry for the "original patent" requirement is "whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees." *In re Amos*, 953 F.2d 613, 618 (Fed.Cir.1991). This inquiry is analogous to the written description requirement under § 112, ¶ 1. *Id.* at 617. Because we have held that the written description requirement is satisfied, we similarly hold that claim 22 complies with § 251.

c. *Recapture rule*

[12][13][14] The recapture rule is a restriction on the ability of patentees to broaden *1368 the scope of their claims through reissue patents. *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1331 (Fed.Cir.2007). Under this rule, " 'claims that are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution are impermissible.' " *Id.* at 1332 (quoting *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed.Cir.1998)). To determine whether an applicant surrendered particular subject matter, we look to the prosecution history for arguments and changes to the claims made in an effort to overcome a prior art rejection. *In re Clement*, 131 F.3d 1464, 1469 (Fed.Cir.1997).

In this case, the parties do not dispute that claim 22 of the reissue '545 patent (directed to the primary frame only) is broader than the claims of the original '207 patent (directed to the primary frame and auxiliary frame combination). However, as Revolution acknowledges, no amendments or arguments were made during prosecution of the original '207 patent. In fact, the claims were allowed in the first Office Action.

Therefore, the recapture rule does not apply.

[15][16] Even if we considered Revolution's argument to be that Chao disclaimed certain claim scope in the specification, we would reject it. Our cases recognize that "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance ... the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed.Cir.2005) (en banc); *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed.Cir.2001) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."). Importantly, any limitation based on such disclaimer must be shown with reasonable clarity and deliberateness. *Id.*

[17] The specifications of both the original '207 patent and the reissue '545 patent show two independent aspects of Chao's invention: (1) an *auxiliary frame* that can be top-mounted onto the primary frame to address the "stable support" issue; and (2) a *primary frame* with the magnetic members supported by projections attached to the rear/sides of the frame to solve the "decreased strength" problem. We agree with the district court that, in pointing out the two deficiencies in the prior art, Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration and a primary frame that has embedded magnetic members. Claim 22 is not directed to either. Instead, claim 22 is directed to the second aspect of Chao's invention. Nowhere in the specification did Chao explicitly disclaim or clearly disavow this subject matter. Therefore, we hold that Chao did not, through statements made in the specification, disclaim the subject matter of claim 22.

Claim 22 satisfies both the written description requirement under § 112, ¶ 1 and the mandate of claiming the same invention under § 251. In addition, the inventor did not disclaim the subject matter of the claim in the specification. Because the district court did not abuse its discretion, we affirm the denial of summary judgment of invalidity of claim 22.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

*1369 2. *Infringement of claim 22*

[18] The district court found that Revolution's primary frames literally infringe claim 22. *SJ Order of Infringement of Claim 22.* Literal infringement requires that the accused device literally embodies every limitation of the claim. *Kraft Foods, Inc. v. Int'l Trading Co.,* 203 F.3d 1362, 1370 (Fed.Cir.2000). Revolution appears to concede that its product included all of the limitations of claim 22. However, it contends that there is no infringement because Revolution's primary frame is not capable of being top-mounted with its counterpart auxiliary frame or any commercially sold auxiliary frame.

Revolution's argument misses the point. Claim 22 recites "said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame." The district court construed this phrase to mean that "the first magnetic members have the ability to magnetically attract the corresponding second magnetic members of an auxiliary spectacle frame when placed above the first magnetic member, with or without actual contact." *SJ Order of Non-infringement of Claims 6 and 34,* slip op. at 15. The court emphasized that "the magnetic members of the primary frame need only be capable of, or 'have the ability to,' magnetically attract magnetic members on an auxiliary spectacle frame placed above the first magnetic members." *Id.*

Contour submitted three specially made auxiliary frames that can be top-mounted onto Revolution's primary frames. Revolution argues that the district court erred in granting summary judgment of infringement of claim 22 based on this evidence. Quoting *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,* 49 F.3d 1551 (Fed.Cir.1995), Revolution points out that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *Id.* at 1555. This statement is certainly correct. However, the facts in *High Tech* are different from the ones in this case.

In *High Tech,* the claim at issue was directed to a hand-held endoscope for dental work, comprising a body member and a camera disposed in the body member, with the camera "being rotatably coupled to said body member." *Id.* at 1552. The district court found infringement because in the accused product,

"the camera [was] 'rotatably coupled to the body member' when the set screws [were] loosened or removed." *Id.* at 1555. We reversed based on the reasoning that the accused camera "was not rotatable within its housing unless [it was] altered, at least to the extent of removing or loosening the set screws that secure the camera to the housing." *Id.* at 1556.

The first factual distinction between *High Tech* and this case is clear from the claim language. The claim in *High Tech* requires a structure: a camera "rotatably coupled" to a body member. In contrast, claim 22 here only requires a capacity to perform a function: "capable of engaging" magnetic members from the top. As such, we find this case similar to *Intel Corp. v. United States International Trade Commission,* 946 F.2d 821 (Fed.Cir.1991).

The claim at issue in Intel is related to a memory chip. 946 F.2d at 831. It recites, *inter alia,* (1) "programmable selection means for selecting said alternate addressing mode," and (2) "whereby when said alternate addressing mode is selected," some signal will be processed. *Id.* The accused infringer conceded that its product was capable of operating in the page mode. *1370 *Id.* at 832. Nevertheless, it argued that the accused product did not infringe because it was "never sold to operate in page mode," and "[n]o customer was ever told how to convert the chip to page mode operation-or even that such conversion was possible." *Id.* The court disagreed and stated that "the accused device, to be infringing, need only be capable of operating in the page mode" and that "actual page mode operation in the accused device is not required." *Id.*

Just like the accused product in *Intel,* Revolution's primary frames, although not specifically designed or sold to be used with top-mounting auxiliary frames, are nevertheless capable of being used in that way-the three specially made auxiliary frames proved so. It is irrelevant that Revolution's auxiliary frames, or any other commercially available auxiliary frames, are not actually used in a top-mounting configuration or cannot be so used.

The second factual distinction between *High Tech* and this case is even more obvious: the camera in *High Tech* has to be altered for it to be "rotatably coupled" to a body member, while Revolution's primary frame does not need to be altered in any way for it to be "capable of engaging" magnetic members from the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

top. Revolution appears to understand this difference but nevertheless insists that Revolution's primary frame does not infringe because even though the "primary frame itself is not modified, the way it is used is certainly modified." In so arguing, Revolution ignores the fact that claim 22 is directed to the primary frame, an apparatus, not a method of using the frame. Therefore, whether the usage of the primary frame is modified is irrelevant.

Revolution goes on to argue that its primary frame does not infringe because it is not capable of stably supporting an auxiliary frame. However, Revolution has conceded that, according to the district court's claim construction, "stable support" is not a limitation of claim 22. On appeal, Revolution does not challenge any claim construction but denies that it has abandoned the "stable support" argument. We find this argument meritless. In any event, Revolution has waived the "stable support" argument.

There is no factual dispute that Revolution's primary frames, as made and sold, satisfy all the elements of claim 22. Therefore, we affirm the district court's grant of summary judgment of infringement.

*3. JMOL, new trial, or remittitur*

[19] Revolution contends that the district court erred in denying the post-trial motions for, in the alternative, JMOL, a new trial, or remittitur. We review the denial of these post-trial motions by applying the law of the regional circuit-in this case, the Ninth Circuit. *See Koito Mfg. Co. v. Turn-Key-Tech, LLC,* 381 F.3d 1142, 1148 (Fed.Cir.2004).

a. *JMOL*

[20] In the Ninth Circuit, the court of appeals reviews a district court's denial of a motion for JMOL de novo. *Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 999 (9th Cir.2008). The test is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. *Id.* A jury's verdict must be upheld if supported by substantial evidence. *Pavao v. Pagay,* 307 F.3d 915, 918 (9th Cir.2002). Substantial evidence is relevant*1371 evidence reasonable minds might accept as adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. *Three

*Boys Music Corp. v. Bolton,* 212 F.3d 477, 482 (9th Cir.2000). A court will not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists. *Landes Const. Co. v. Royal Bank of Can.,* 833 F.2d 1365, 1371 (9th Cir.1987).

[21] At trial, Contour proposed $11 million in damages and Revolution advocated for $312,000. The jury returned a verdict awarding damages of $4.3 million to Contour. Revolution argues that JMOL is required because the jury verdict is mathematically impossible. According to Revolution, the damages would have been at most around $2.8 million, computed by multiplying the total revenue of $55 million as calculated by Contour's counsel, to the reasonable royalty rate of 5% as the jury found.

The total revenue of $55 million was calculated based on (1) the average sales prices advocated by Revolution, and (2) 70% of the total sales price of the combination eyewear as the price for the infringing primary frames. As the district court pointed out, the jury did not have to use either number in calculating the damages. Indeed, Revolution's CEO testified about two different prices for the infringing products: the list price and the much discounted average price. He also testified that the business model of Revolution "was built on selling a primary frame with an auxiliary clip-on sun lens," and not just primary frames or auxiliary frames by themselves. Construing such testimony in the light most favorable to Contour, the jury could have used the higher list price and/or the entire price for the combination eyewear in computing the damages. The damages thus calculated would have been even more than $4.3 million.

Revolution argues that there is no substantial evidence to support even the $55 million total revenue as advocated by Contour. It attacks the testimony of Contour's witness regarding the 70%/30% breakdown of the price for the primary frame/auxiliary frame. Revolution forgets that, at the JMOL stage, the court does not weigh evidence, and all inferences must be drawn in favor of Contour. Revolution also contends that there is no substantial evidence to support the jury's finding of the 5% royalty rate. Regarding this issue, the district court went through a detailed analysis of relevant factors under *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). We agree with the dis-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

trict court that the evidence is sufficient to support the 5% royalty rate. In sum, the district court did not err in denying Revolution's motion for JMOL.

### b. *New trial*

[22][23][24][25] In the alternative, Revolution contends that the "fatal inconsistency" in the interrogatories of the Special Verdict necessitates a new trial. In the Ninth Circuit, the denial of a motion for a new trial is reviewed for an abuse of discretion. *Incalza v. Fendi N. Am., Inc.,* 479 F.3d 1005, 1013 (9th Cir.2007). In deciding a motion for a new trial, the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party. *Landes Constr., 833 F.2d at 1371.* In addition, the existence of substantial evidence does not prevent a court from granting a motion for a new trial if the verdict is against the clear **\*1372** weight of the evidence. *Id.* However, a district court may not grant or deny a new trial merely because it would have arrived at a different verdict. *Wilhelm v. Associated Container Transp. (Austl.) Ltd.,* 648 F.2d 1197, 1198 (9th Cir.1981).

Revolution argues that the $4.3 million damages award exceeds the royalty for both the infringing primary frame and the non-infringing auxiliary frame. We have already explained that the jury verdict of $4.3 million is within reason because the jury did not have to base its damages computation on the average price. More importantly, as the district court stated, the damages award based on a reasonable royalty rate is only the floor, not the exact amount. This rationale is well supported by the statutory language, *see* 35 U.S.C. § 284 (requiring that the court "award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty"), and our case law, *see, e.g., Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544 (Fed.Cir.1995); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed.Cir.1987) (stating that the purpose of § 284 "is not to provide a simple accounting method, but to set a floor below which the courts are not authorized to go"). Therefore, the district court did not abuse its discretion in denying a new trial.

### c. *Remittitur*

[26][27][28] Revolution further asserts that the district

court should have reduced the jury verdict. A jury's supportable finding of the amount of damages must be upheld unless the amount is grossly excessive or monstrous. *See Lambert v. Ackerley,* 180 F.3d 997, 1011 (9th Cir.1999) (en banc). A trial court's decision against remittitur is reversed only on a showing of clear abuse of discretion. *See L.A. Police Protective League v. Gates,* 995 F.2d 1469, 1477 (9th Cir.1993).

Revolution repeats the same arguments here as those for JMOL and a new trial. As discussed earlier, the verdict is supported by substantial evidence. The district court found the jury verdict of $4.3 million "well within the range of damages advocated by the parties at trial," i.e., between $312,000 as proposed by Revolution, and $11 million as proposed by Contour. Therefore, we agree with the district court that the jury verdict is not grossly excessive. Certainly, no abuse of discretion has been shown.

Accordingly, we affirm the denial of Revolution's post-trial motions for JMOL, for a new trial, or for remittitur.

### 4. *Attorney fees*

[29][30][31] Contour cross-appeals the district court's denial of its motion for attorney fees based on Revolution's alleged willful infringement. Section 285 authorizes the court in exceptional cases to award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement. *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311, 1321-22 (Fed.Cir.2006). The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process: (1) the district court must determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, the district court must then determine in its discretion whether an award of attorney**\*1373** fees is justified, a determination that we review for an abuse of discretion. *Digeo, Inc. v. Audible, Inc.,* 505 F.3d 1362, 1366-67 (Fed.Cir.2007).

In this case, the district court stopped its inquiry after the first step-it did not find the case exceptional because there was no sufficient evidence to support a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

563 F.3d 1358, 90 U.S.P.Q.2d 1733
**(Cite as: 563 F.3d 1358)**

finding of willfulness.[FN3] Therefore, we only need to analyze whether that fact finding was clearly erroneous. The most important fact here is that Contour failed to plead a claim for willful infringement. As a result, it was barred from seeking enhanced damages based on willful infringement, and no fact finder ever addressed the question of willfulness.

> FN3. The district court awarded Contour attorney fees based on Revolution's litigation misconduct. Revolution does not appeal that issue here.

Contour bases its cross-appeal argument on a statement by the district court in the *Order on Intervening Rights.* In denying Revolution's defense of equitable intervening rights, the court articulated that Contour had shown that "Revolution ha[d] unclean hands. Revolution willfully infringed Contour's patent when it continued to sell the infringing frames after the Court granted Contour's motion for summary judgment on the issue of infringement on April 30, 2007." Contour argues that there is no distinction between "intervening rights" willfulness and "exceptional case" willfulness and therefore, the district court committed reversible error in denying the attorney fees based on willful infringement. After reviewing the record, we disagree.

[32][33] First of all, as the district court correctly recognized, a limited finding of willfulness on Revolution's sales of infringing frames after the April 30, 2007 was "an insufficient basis on which to declare the entire five-year case as exceptional." More importantly, the issue of equitable intervening right is governed by 35 U.S.C. § 252, under which a court may protect investments made before reissue "to the extent and under such terms as the court deems equitable." While provided by a statutory provision, this prong of the intervening rights is entirely equitable in nature. As such, issues of fact underlying the equitable intervening rights are matters for court, not jury disposition. In contrast,

> [l]iability for willfulness of infringement turns on considerations of intent, state of mind, and culpability....
>
> ... Although fairness as between patentee and infringer is a consideration in the determination of whether illegal behavior warrants an enhanced

penalty, the question does not thereby become "equitable." The issue of willful infringement remains with the trier of fact.

*Nat'l Presto Indus., Inc. v. W. Bend Co.,* 76 F.3d 1185, 1192-93 (Fed.Cir.1996).

In this case, Contour failed to plead willful infringement, and the fact finder did not examine the issue. This does not prohibit the court from taking into account, as *dictated by the equities,* facts that would normally be considered under willful infringement analysis. Indeed, the district court did so, and rightfully concluded that Revolution's conduct amounted to "unclean hands." However, as explained by the district court, such a "limited finding [of willfulness] on an equitable issue [was] not a sufficient 'clear and convincing' finding of willfulness to support finding this case 'exceptional.' " *Fees Order,* slip op. at 14.

*1374 There is no clear error in the court's factual failure to find willful infringement and the resulting conclusion that this is not an exceptional case. Thus, we affirm the court's denial of attorney fees based on willful infringement.

### IV. CONCLUSION

For these reasons, the judgment of the district court is affirmed in all aspects.

*AFFIRMED*

C.A.Fed. (Cal.),2009.
Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.
563 F.3d 1358, 90 U.S.P.Q.2d 1733

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT B**

## van Rooyen, Wim (Assoc-Sac-LT)

| | |
|---|---|
| **From:** | Jose Pena [jpena@aspexeyewear.com] |
| **Sent:** | Tuesday, February 09, 2010 2:22 PM |
| **To:** | 'Thomas Fessler' |
| **Cc:** | Nicodema, Michael (Shld-NJ-LT/IP) |

**Subject:** RE: Fw:

Thomas I had a chance to review and discuss your "Terms of Settlement" internally.  We were very surprised at the proposed terms as these terms are inconsistent with our discussions so far and contrary to your February 3rd email.  In addition, we understand that VSP is again calling Aspex's customers despite your repeated assurances that they would not be contacted.  Once again we ask that you stop harassing our customers.  To be clear, we will not license our patents to Marchon, VSP or Altair under the threats of delisting and the continued bad faith dealings that we have experienced from VSP since these discussions have been ongoing and the years preceding during the Altair litigation.  If Marchon, Altair and VSP believe that its overwhelming influence in the market gives them the ability to single-handedly crush its competition with a call and a letter and it can compel Aspex to deviate from its long-standing and unwavering position that it will not license its patents to its competitors, then Marchon, Altair and VSP would be wrong and tomorrow's meeting is unnecessary.  We are cognizant that relatively speaking, compared to Marchon, Altair and VSP, Aspex is a very small company and probably insignificant in your eyes but Aspex has served the optical industry long before VSP ever sold its first frame through either of Marchon or Altair. That's over 42 years that Aspex's innovations and designs have influenced the eyewear industry and the consumer's experience.  And for over 42 years, Aspex has continuously confronted those that choose the path of least resistance to profit by misappropriating our technology  and know-how and benefitting from our investments and hard work developing these technologies. Quite honestly, the unwillingness of Marchon, Altair and VSP to withdraw its accused device from the market is perplexing since Marchon, Altair and VSP have a self-proclaimed alternative and "superior" technology in their Ultraclip products.  Marchon's unwillingness to move to a non-infringing alternative supports what Aspex has been saying all along: Aspex's patented technology is superior and for that reason it has become the most widely copied technology in our industry, including your subsidiaries Marchon and Altair.  Despite our reservations with regards to VSP's motives and conduct, we are hopeful that we can resolve our disputes without the need of judicial intervention.  We request that you please confirm that Marchon, Altair and VSP are willing to withdraw the Marchon and Altair accused devices from the market before the scheduled meeting time tomorrow.  Thierry and I will be attending the meeting tomorrow under the assumption that Marchon, Altair and VSP will withdraw the accused devices.  If that is not the case then this meeting will be a waste of time to both of us and in our opinion, the latest Marchon, Altair and VSP tactic to delay the inevitable.  We await your response.

José

> **From:** Thomas Fessler [mailto:ThomFe@VSP.com]
> **Sent:** Monday, February 08, 2010 6:43 PM
> **To:** Jose Pena
> **Cc:** Joe Paek
> **Subject:** Fw:

I have reserved a conference room Wed at 2pm at the below offices here in Miami. Thomas

---

**From:** Kristy Tyler
**To:** Thomas Fessler
**Sent:** Mon Feb 08 15:20:55 2010
**Subject:**

Pursuant to your request:

Epstein Becker Green
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4300
Miami, Florida 33131

MailGate.vsp.com made the following annotations
--------------------------------------------------------------------
NOTICE: This message is intended only for the individual to whom it is addressed and may contain information that is confidential or privileged. If you are not the intended recipient, or the employee or person responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use is strictly prohibited. If you have received this communication in error, please notify the sender and destroy or delete this communication immediately. --------------------------------------------------------------------