IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

---oOo---

ASPEX EYEWEAR, INC.,

       Plaintiff,

vs.                           No. Civ. S-10-632

VISION SERVICE PLAN;
MARCHON EYEWEAR, INC.;
ALTAIR EYEWEAR, INC.,

       Defendants.

_____/

---oOo---

REPORTER'S TRANSCRIPT

COURT'S RULING

WEDNESDAY, DECEMBER 8, 2010

---oOo---

Reported by:    KELLY O'HALLORAN, CSR #6660

APPEARANCES

For the Plaintiff:

    GREENBERG TRAURIG
    200 Park Avenue
    Florham Park, New Jersey  07932
    BY:  ROGER B. KAPLAN
        ALEXANDER J. ANGLIM

For the Defendant:

    REINHART BOERNER VAN DEUREN
    1000 North Water Street, Suite 2100
    Milwaukee, Wisconsin  53202
    BY:  SCOTT W. HANSEN


    DOWNEY BRAND
    621 Capitol Mall, 18th Floor
    Sacramento, California  95814
    BY:  MEGHAN M. BAKER

1           SACRAMENTO, CALIFORNIA

2          WEDNESDAY, DECEMBER 8, 2010

3                  ---oOo---

4       (Excerpt of proceedings.)

5       THE COURT:  All right.  This is a motion to dismiss,

6  not a motion for a preliminary injunction.  And as both

7  parties agree and point out, the standards to be applied are

8  different.  All allegations in the complaint are to be

9  considered true, and the Court is to draw all reasonable

10 inferences in favor of the plaintiff.

11      To survive a motion to dismiss, the plaintiff needs to

12 plead "enough facts to state a claim to relief that is

13 plausible on its face."  That's the Twombly case that we

14 discussed.  Dismissal is appropriate where the plaintiff

15 fails to state a claim supportable by a cognizable legal

16 theory.

17      In this case, the plaintiffs have made what I think is

18 an interesting and almost compelling argument given the

19 limited set of facts in this case.  I mean you did exactly

20 what clients want lawyers to do, Mr. Kaplan.  The brief's

21 excellent.  Your argument was excellent.  Having said that,

22 I'm still not convinced.  I think, as Mr. Hansen just argued,

23 the problem that your client faces in this case began with

24 the Ninth Circuit's decision.  And as much as you'd like me

25 to focus only on that one sentence, I can't ignore the Ninth

1  Circuit's finding in this specific case in which the Ninth
2  Circuit writes that "An implied contract...in no less degree
3  than an express contract, must be founded upon an ascertained
4  agreement of the parties to perform it.  The very heart of
5  this kind of agreement is an intent to promise.  The record
6  in this case does not reveal any intent on the part of VSP to
7  promise Aspex that it would not alter their relationship or
8  Aspex's in-network status so long as Aspex disclosed and
9  updated its prices.  Further, the record contains no facts
10 demonstrating that VSP committed itself to continue in its
11 relationship with Aspex for any definite duration.  The
12 agreement between Aspex and VSP appears to be one of
13 indefinite duration, making it terminable at will of either
14 party."  Citing the Zimco Rests., Inc. vs. Bartenders and
15 Culinary Workers Union case, in which the court's quoted,
16 "The rule is well-established in California that as to
17 contracts contemplating continuing performance for an
18 indefinite time, the general rule is that such contracts are
19 terminable at will by either party."
20      The test that's discussed in the briefs when there is,
21 as in this case, an alleged agreement that does not expressly
22 set forth grounds for termination, and despite plaintiff's
23 best efforts, it's undisputed that this is not, if you
24 consider the application, a contract or an agreement, there
25 is no express language similar to the Zee case that we

1  discussed, Zee Medical Distributor Association vs. Zee
2  Medical, Inc.  And the defendants VSP distinguishes Zee and
3  the cases cited therein in their reply brief.  I found that
4  argument to have a lot of merit in terms of distinguishing
5  Zee.  The agreements, the contracts in Zee, and the cases
6  cited in Zee, contain additional language, different
7  language, at least language you could hang a hat on with
8  respect to termination.  That's not anywhere in this
9  application.
10        But there is an argument that's raised in the
11 plaintiff's brief that argues that "even if the specific
12 grounds for termination were not expressly set forth in VSP's
13 in-network application, California courts have also
14 consistently recognized that limits on a party's right to
15 terminate can be implied from the parties' conduct and
16 surrounding circumstances."  And the case cited is the Zee
17 Medical case.
18        Plaintiffs go on to argue:  "Given the foregoing,
19 California courts employ a three-step analysis when
20 determining whether a contract can be terminated at will.
21 The first step is to determine whether the contract contains
22 an express provision setting forth a party's right to
23 terminate."  That's the Zee Medical case.  I do not find
24 under the facts alleged, and taken in the light most
25 favorable to plaintiffs, that there is any type of express

1    provision setting forth the parties' rights to terminate in
2    this case, and there's nothing similar to what was actually
3    involved in the Zee Medical case.
4         So then the second step is:  "If there is no express
5    termination provision, 'the court then determines whether one
6    can be implied from the nature and circumstances of the
7    contract.'"
8         The argument that's raised by Aspex is you can imply
9    that.  But it's interesting to me that the argument is based
10   on after-the-fact conduct.  There's no evidence and no facts
11   alleged in this complaint that talk about precontract
12   conduct.  And that's because there wasn't any precontract
13   conduct.  It's simply an application, you fill it out, and
14   the application contains two requirements that someone has to
15   meet to become an in-network provider.  There's no
16   negotiation in this case.  It's not even under any stretch
17   the type of contract that Aspex wants this Court to imply in
18   this case.  It really wasn't negotiated at all.  And that I
19   think is a key difference in this case compared to the cases
20   relied upon by the plaintiffs.
21        So I don't find as a matter of law that I can imply
22   from the nature and circumstances of the contract that there
23   was some type of termination provision.
24        And then the third step is:  "When the contract lacks
25   either an express or an implied termination provision," which

1   I do find at least as alleged in looking at the contract
2   attached to the briefs, "when the contract lacks either an
3   express or an implied termination provision, and there is no
4   specified time period of duration, then the courts generally
5   construe the contract as terminable at will."
6       So I agree with that argument, that it really is as a
7   matter of law terminable at will and as alleged in the
8   complaint.
9       I also find, you can tell from my questions, a lot of
10  merit to the argument that what plaintiffs are asking the
11  Court to do is imply what would be an unreasonable contract
12  term.
13      I agree that this is a case that VSP would have never
14  agreed to the terms that the plaintiffs want the Court to
15  imply.  And I found merit in that argument as well.
16      I also find merit in the argument that if I rely on
17  the allegations in the complaint and I look at the
18  application and the conduct and what they've done in the
19  industry, as the plaintiffs want the Court to do, I still
20  don't find any evidence of mutual intent.  It's a subjective
21  belief that Aspex is arguing that never was confirmed in any
22  way, and there's no facts alleged.  And that's the key in
23  this motion to dismiss.  No facts alleged that in any sense
24  raise that issue, or at least I can draw a reasonable
25  inference that there was some type of mutual intent in this

1  case.

2          Which then comes down to the plaintiff's final
3  argument.  And that is, in effect, Judge, it's a motion to
4  dismiss.  You need to allow us to at least do some discovery.
5  Intent is a factual issue.  We need an opportunity to develop
6  those facts.  And in response to that, you come back to the
7  Twombly and Iqbal cases.  And as argued in the reply brief,
8  VSP writes as follows:  "According to Aspex, the Court must
9  now permit it to pursue discovery, which Aspex speculates may
10 uncover unidentified information to support its claim.  Aspex
11 misstates the burden it must satisfy before proceeding to
12 discovery; its bear assertions, unwarranted inferences, and
13 speculative claims are not enough to defeat VSP's motion to
14 dismiss."  Citing Bell Atlantic Corp. vs. Twombly, the Moss
15 case, and the Wise case as well.

16         "VSP should not be forced to endure the difficulty and
17 expense of the discovery process to allow Aspex to fish
18 through VSP's files in the hope that it will reveal support
19 for an otherwise deficient claim.  The very purpose behind
20 the heightened pleading standard announced in Twombly and
21 Iqbal is to protect defendants like VSP from being 'forced to
22 undergo costly discovery unless the complaint contains enough
23 detail, factual or argumentative, to indicate that the
24 plaintiff has a substantial case.'"  Citing Jones vs. AIG
25 Risk Management, a Northern District of California case from

1    this year.  "As discussed above, Aspex failed to support its
2    breach of contract claim with actual, plausible factual
3    allegations and inferences.  Without any support for its
4    claim, Aspex cannot 'unlock the doors of discovery.'"  Citing
5    Elan Microelectronics Corp. vs. Apple.  Again, a Northern
6    District case from 2009.  And citing Ashcroft vs. Iqbal, 129
7    Supreme Court 1937, a 2009 case.
8            I read Twombly and Iqbal in the same manner as VSP.
9    That doesn't mean that the Ninth Circuit might not disagree
10   with me.  I think that is an issue that, while I find in
11   favor of the defendants, it is an issue that's a close issue.
12   But I read Twombly and Iqbal as cases that have changed the
13   nature of pleadings in federal court.  And I don't find that
14   these facts as alleged now in the second amended complaint
15   are really so significantly different from what was before
16   the Court at the preliminary injunction stage or before the
17   Ninth Circuit when it decided the preliminary injunction
18   appeal.  Things haven't changed.  There hasn't been anything
19   significant or enough to convince this Court that this case
20   should go forward and that I should allow discovery.  Because
21   of the heightened pleadings required by Twombly and Iqbal,
22   I'm going to grant the motion to dismiss at this point with
23   prejudice.  I'm going to dismiss this case for the reasons I
24   stated.  And again, with respect to should I allow it to go
25   forward and permit discovery, I don't see as a matter of law

1   that there's a basis for doing that.  It's a tough case for
2   Aspex.  And so for those reasons, I am going to grant the
3   motion to dismiss.
4         But I want to say one other thing.  I know there is
5   pending, and I took a look at it, a Rule 11 motion that I'm
6   scheduled to hear in February.  Both sides should leave this
7   court knowing that it's unlikely that I'm going to grant that
8   Rule 11 motion.  If you want to pursue it, that's up to you.
9   I don't grant Rule 11 motions lightly.  And I started out my
10  comments about plaintiff's argument for that purpose.  This
11  is a tough case for plaintiffs to bring, but I think you did
12  the best job you can given the facts that you had for a
13  client that feels that they were wronged by VSP.  That's part
14  of the cost of doing business for VSP.  I know you don't like
15  being sued.  No one likes to be sued.  No one likes to be
16  terminated as an in-network provider.  Unfortunately, that's
17  the nature of business and the nature of litigation.
18        So I will leave it up to the parties to decide whether
19  you want to go forward with that.  If you do, I'll read the
20  opposition, but I'm giving you a huge hint here.  I think
21  that the likelihood of success on that motion is slim to
22  none.  And I'll leave it at that.  Even though I haven't even
23  read the opposition yet, I've looked at and decided enough
24  Rule 11 motions to know when I have a Rule 11 case in front
25  of me and when I don't.

1         With that, I'll have defendants prepare the proposed
2    order.  Run it by plaintiffs for approval as to form.  Get it
3    to me within ten days, and we'll get it filed.
4         MR. HANSEN:   Thank you, your Honor.
5         MR. KAPLAN:   Thank you, your Honor.
6         MR. ANGLIM:   Thank you, your Honor.
7         (Proceedings were concluded.)

1          I certify that the foregoing is a correct transcript
2     from the record of proceedings in the above-entitled matter.
3
4
5                              /s/ Kelly O'Halloran
6                              KELLY O'HALLORAN, CSR #6660